**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 40789**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2014 Unpublished Opinion No. 475 |
| | ) | |
| Plaintiff-Respondent-Respondent on Appeal, | ) | Filed: April 23, 2014 |
| | ) | |
| | ) | Stephen W. Kenyon, Clerk |
| v. | ) | |
| | ) | THIS IS AN UNPUBLISHED |
| ERIC JAMES SCOTT, | ) | OPINION AND SHALL NOT |
| | ) | BE CITED AS AUTHORITY |
| Defendant-Appellant-Appellant on Appeal. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Kathryn A. Sticklen, District Judge; David D. Manweiler, Magistrate.

Order, on intermediate appeal, affirming judgment of conviction for criminal contempt, reversed.

Eric J. Scott; Thomas J. McCabe of Westberg McCabe & Collins, Chtd., Boise, for appellant. Thomas J. McCabe argued.

Hon. Lawrence G. Wasden, Attorney General; Mark W. Olson, Deputy Attorney General, Boise, for respondent. Mark W. Olson argued.

Richard A. Eppink for the American Civil Liberties Union of Idaho Foundation, Boise, as amicus curiae.

_____

GUTIERREZ, Chief Judge

Eric James Scott appeals from the district court's order, on intermediate appeal, affirming the judgment of conviction entered upon the magistrate's finding that Scott was guilty of criminal contempt. For the reasons set forth below, we reverse the order of the district court affirming the judgment of conviction for criminal contempt.

## I.

## FACTS AND PROCEDURE

While Scott was serving as co-counsel to a defendant charged with possession of an open container and battery, the magistrate (initiating magistrate) denied the defense's motion to

suppress evidence, motion in limine, and motion to dismiss. Scott responded by filing a motion to withdraw from representation of the defendant. The detailed seven-page motion first discussed the substantive legal errors, with citations to authority, that Scott believed the initiating magistrate made in denying the motions.[1] Scott concluded the motion as follows:

> The Court's errors in this case were so inexplicable and so great in number that Counsel has formed the belief that the Court is
> (a)     lazy;
> (b)     incompetent;
> (c)     biased;
> (d)     prejudiced; or
> [(e)]    all or some of the above.
> With all due respect, Counsel simply cannot escape this belief. There is no explanation for this Court's "finding" of a "fact" that *did not exist*. It would be understandable if this Court *overlooked* a fact, but this Court *made up a fact*. It just so happens that this Court made up facts to the advantage of his former employer, the Boise City Prosecutor's Office. Therefore, this Court is either biased toward them, prejudiced against Counsel, too lazy to actually listen to the recording of the relevant interview, or too incompetent to reach the correct conclusion from the facts. Therefore, Counsel lacks faith in this Court's ability to objectively and competently serve as a fact-finder in this case.
>
> For the reasons set forth above, Counsel also has no faith in this Court's ability to competently and objectively interpret the law in this case. The Court's stunningly nonsensical statement of the "test" for determining custody speaks for itself. The Court also did not even understand the rather simple ordinance, and then ironically called into question Counsel's legal abilities.[2] This Court was not

---

[1]     Scott also prefaced this discussion with the following statement:

> Prior to writing this Memorandum, Counsel drafted a 15-page intense, scathing rebuke of this Court's Memorandum Decision on Defendant's Motion to Dismiss/in Limine . . . . Rather than submitting that rebuke, however, Counsel simply makes the following points prior to withdrawing, in an effort to explain why Counsel intends to withdraw from this matter.

[2]     This is apparently in reference to a footnote included by the initiating magistrate in its written memorandum denying the defense's motion to suppress and motion in limine, which Scott interpreted as suggesting he was "not capable of practicing criminal law in Ada County." The footnote at issue was a response to Scott's argument that the container in the case was not actually open and Scott's request that the magistrate take "'judicial notice of the fact that the vast majority of Idaho's 3 year-old children are capable of identifying the difference between an 'open' and 'closed' container.'" The initiating magistrate wrote that it would "resist this request since the ordinance prohibits not only the possession of an open container in a public place, but also the consumption of an alcoholic beverage in public" and included the following footnote:

> impressed with Counsel's legal skills, but suffice it to say that Counsel shares a similar opinion of this Court's abilities to interpret the law and find facts.
>
> Due to Counsel's inability to maintain the requisite level of respect for this Court, Counsel feels that it would be in his client's best interests to withdraw from this matter.

(Footnote omitted.)

Several days later, the initiating magistrate held a hearing on the motion to withdraw. Upon the initiating magistrate's inquiry, Scott indicated he had, in fact, filed the motion. At the conclusion of the hearing, Scott was served with a written complaint stating that pursuant to Idaho Rule of Civil Procedure 75(c)(1), the initiating magistrate was proceeding with a contempt action against Scott for engaging in "disorderly, contemptuous or insolent behavior towards a judge and/or by willful neglect or violation of Rule 8.2, Idaho Rules of Professional Conduct." The complaint further alleged that the statements in the motion to withdraw "concerning the qualifications or integrity of the court are libelous and serve no purpose other than to degrade the court and bring it into the contempt of the people." The charge was not accompanied by an affidavit.

A court trial was scheduled on the charge before a different magistrate. Scott, represented by counsel, filed a motion to dismiss for lack of subject matter jurisdiction and two motions for a directed verdict on various grounds, which the magistrate did not dispose of prior to trial. Following a trial, at which the initiating magistrate testified, Scott was found guilty of criminal contempt. The magistrate imposed a fine, sentenced Scott to five days in jail (with three days suspended), and placed Scott on unsupervised probation for six months. As conditions of probation, Scott was also required to perform sixty hours of pro bono legal work, complete three hours of ethics continuing legal education credits, and write a letter of apology to the initiating magistrate. Approximately one month later, the magistrate issued a "Memorandum Decision and

---

"While the court does not know if the dual nature of the ordinance would be apparent to a three year old child, it should be apparent to those practicing criminal law in Ada County."

According to the initiating magistrate's testimony at the contempt trial, the magistrate included the footnote because the "tone" of Scott's motions "caught [him] off guard" and he believed they were too "pompous" and "somewhat overbearing" for "someone who's having his first case in front of me." The magistrate further asserted that it was "a bit out of character" for the magistrate to include such a statement.

3

Order Re: Contempt, Motions for Directed Verdict, Motions to Dismiss, Motion to Strike and Request for Fees," which rejected Scott's arguments on those issues.

Scott appealed the conviction to the district court, which affirmed. Scott now appeals to this Court.

## II.

## ANALYSIS

Scott advances numerous arguments regarding his conviction on appeal, but we need only address the issue we deem dispositive: that the magistrate did not acquire jurisdiction over the charge because no affidavit was included with the charging document. We also address Scott's request for attorney fees and costs.

When reviewing the decision of a district court sitting in its appellate capacity, our standard of review is the same as expressed by the Idaho Supreme Court:

> The Supreme Court reviews the trial court (magistrate) record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. If those findings are so supported and the conclusions follow therefrom and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure.

*Pelayo v. Pelayo*, 154 Idaho 855, 858-59, 303 P.3d 214, 217-18 (2013) (quoting *Bailey v. Bailey*, 153 Idaho 526, 529, 284 P.3d 970, 973 (2012)). Thus, the appellate courts do not review the decision of the magistrate court. *Bailey*, 153 Idaho at 529, 284 P.3d at 973. Rather, we are procedurally bound to affirm or reverse the decisions of the district court. *State v. Korn*, 148 Idaho 413, 415 n.1, 224 P.3d 480, 482 n.1 (2009).

## A. Affidavit

Scott contends the conviction is void because there was no affidavit submitted with the written charge as required by the controlling rule and therefore the magistrate did not have subject matter jurisdiction. In this regard, he first contends that Idaho Criminal Rule 42, not Idaho Rule of Civil Procedure 75 (as was utilized in this case) was applicable to the charge because the contempt charge was "brought in connection with a criminal proceeding." I.C.R. 42. This distinction is consequential, he argues, because Idaho Criminal Rule 42 always requires an affidavit to initiate nonsummary contempt proceedings (except those initiated by an order to show cause for the failure to appear in court). I.C.R. 42(c). By contrast, pursuant to the

4

applicable rules of civil procedure that govern contempt proceedings "brought in connection with a civil lawsuit or as a separate proceeding," I.R.C.P. 75, an affidavit is required for the initiation of nonsummary contempt proceedings by a judge *unless* "the facts recited in it are based upon the judge's personal knowledge and/or upon information from the court file contained in documents prepared by court personnel," I.R.C.P. 75(c). We need not determine whether the criminal rules or rules of civil procedure are applicable, however, because even assuming, without deciding, that Rule 75(c) was appropriately relied upon in this case, an affidavit was still required.

Scott contends the exceptions to the affidavit requirement in Rule 75(c)(1)--that the facts alleged were within the judge's personal knowledge and/or were based upon information from the court file contained in documents prepared by court personnel--are inapplicable to this case. In regard to the former exception, Scott contends the initiating magistrate did not have personal knowledge of the allegation in the written charge that "on August 12, 2011, Mr. Scott filed a Motion to Withdraw." Scott points out that the initiating magistrate testified he "had no personal contact with Mr. Scott prior to the motion to withdraw," and when asked whether he had any "personal knowledge that the motion to withdraw was filed by Mr. Scott" the initiating magistrate answered, "Just from my discussion with him at the hearing." Obtaining Scott's admission to having written and filed the motion, Scott contends, does not amount to personal knowledge that he did so.

The magistrate rejected Scott's argument below, noting the charging document itself stated the charge was based "'upon the court's personal knowledge and upon information contained in the court file.[']" The magistrate also noted that prior to being served with the written charge, Scott admitted in open court that he authored and filed the motion to withdraw. The district court similarly rejected Scott's contention, asserting, "Scott is mixing the requisite personal knowledge required for a summary contempt proceeding with the personal knowledge required in a non-summary proceeding." The district court continued:

> This was not a summary contempt proceeding. There was no question that Scott authored and filed the motion to withdraw and he did not deny having done so during the hearing on the motion to withdraw. During the motion hearing, he reiterated his reasons for filing it. [The initiating magistrate] obviously read the motion prior to the hearing, as he specifically responded to its assertions during the hearing, including the derogatory language, which he read in court.

5

> [The initiating magistrate] had personal knowledge of the facts constituting the contempt, sufficient to dispense with the affidavit requirement of I.R.C.P. 75(c) in this nonsummary contempt proceeding.

We first address whether the initiating magistrate had personal knowledge of the facts alleged in the charging document such that an accompanying affidavit was unnecessary. While there are no cases in Idaho on this particular provision of Rule 75(c)(1), the meaning of personal knowledge is more developed in the context of summary contempt[3] proceedings pursuant to Rule 75(b), which provides:

> (1) A summary proceeding may be used only if the contempt was committed in the presence of the court. A contempt is committed in the presence of the court if:
>> a. The conduct occurs in open court in the immediate presence of the judge;
>> b. The judge has *personal knowledge*, based upon personally observing and/or hearing the conduct, of the facts establishing all elements of the contempt; and
>> c. The conduct disturbs the court's business.

(Emphasis added.) Thus, summary contempt proceedings can be used only in instances of contempt that occur in the immediate presence of the court and where the judge has personal knowledge of all facts necessary to constitute the contempt based upon the judge's own observation of the contemptuous conduct. *Camp v. E. Fork Ditch Co., Ltd.*, 137 Idaho 850, 866 n.11, 55 P.3d 304, 320 n.11 (2002). *See also Cooke v. United States*, 267 U.S. 517, 535 (1925). Knowledge gained by the contemnor's confession or statements by others, even if under oath, does not constitute personal knowledge of the judge. *Cooke*, 267 U.S. at 535. Thus, a judge cannot rely upon statements made by others to supply any of the essential elements of the contempt. *In re Oliver*, 333 U.S. 257, 274-75 (1948).

On appeal, the State argues Scott's contemptuous behavior was "self-evident from the motion itself, and the act of contempt was completed upon Scott's filing of the motion." The State asserts that pursuant to Rule 75(c)(1), a judge should be considered to have personal knowledge of the "existence and contents of all filings made in cases over which he or she presides." Although this assertion would certainly be true in regard to the *contents* of the motion

---

[3] A summary contempt proceeding is one in which the contemnor is not given notice of the charge and an opportunity for a hearing on the issue of whether or not he is in contempt. *Camp v. E. Fork Ditch Co., Ltd.*, 137 Idaho 850, 866 n.11, 55 P.3d 304, 320 n.11 (2002).

6

to withdraw, logically it cannot be extended to conclude that the initiating magistrate had personal knowledge that it was Scott who filed this document--which was a specific, and necessary, assertion contained in the charging document.

The State also asserts, as the district court found on intermediate appeal, that contrary to Scott's contention, the "immediate presence" requirement of Rule 75(b)(1)(a) is not equivalent to the personal knowledge requirement in Rule 75(c)(1). Thus, the State appears to conclude that it cannot be a requirement of Rule 75(c)(1) that the contempt was committed in the immediate presence of the court. Again, the State is correct in its assertion that the rules utilize different language (although Rule 75(b) also includes a personal knowledge requirement), but this assertion is largely irrelevant to our inquiry into the personal knowledge requirement of Rule 75(c)(1). Indeed, the State does not argue, and would not be expected to given the common sense understanding of personal knowledge, that the initiating magistrate did, in fact, have *personal* knowledge that Scott actually filed the motion. A plain understanding of the term is that personal knowledge of an action or event is acquired by having personally observed and/or heard the event; otherwise, it is simply "knowledge." *See e.g.*, I.R.C.P. 75(b)(1) ("The judge has personal knowledge, *based upon personally observing and/or hearing the conduct*, of the facts establishing all elements of the contempt . . . ." (emphasis added)).

Here, there is no dispute that the initiating magistrate did not personally observe Scott file the motion. Rather, according to the initiating magistrate's testimony at the contempt proceeding, his knowledge that Scott did so was based on Scott's confession at the hearing prior to the service of the contempt complaint. As we noted above in regard to summary proceedings, and now extend to the context of nonsummary proceedings, knowledge gained by the contemnor's confession or statements by others, even if under oath, does not constitute personal knowledge of the judge. *See Cooke*, 267 U.S. at 535. Accordingly, the initiating magistrate did not have the requisite personal knowledge of the facts alleged in the charging document--specifically, that Scott himself filed the motion--to avoid the affidavit requirement on this basis.

We next turn to the State's argument that even if the contempt allegation was not based on the initiating magistrate's personal knowledge, an affidavit was still not required because the allegations were based "upon information from the court file contained in documents prepared by court personnel." I.R.C.P. 75(c)(1). Specifically, the State contends the filed motion to

7

withdraw signed by Scott qualified as a document "prepared" by court personnel. Scott disagrees, contending the exception does not apply because preparing in this context is equivalent to creating or authoring the document, not simply handling the document after it was filed. The State counters that "it is more likely that, in this context, the term 'prepared' refers simply to court personnel's role in organizing and maintaining a court file in a pending case."

The objective of statutory interpretation is to give effect to legislative intent. *State v. Yzaguirre*, 144 Idaho 471, 475, 163 P.3d 1183, 1187 (2007). Because the best guide to legislative intent is the words of the statute itself, the interpretation of a statute must begin with the literal words of the statute. *Id.* Where the statutory language is unambiguous, the Court does not construe it, but simply follows the law as written. *Id.* The plain meaning of a statute therefore will prevail unless clearly expressed legislative intent is contrary or unless plain meaning leads to absurd results. *Id.* In determining its ordinary meaning, effect must be given to all the words of the statute if possible, so that none will be void, superfluous, or redundant. *Id.*; *State v. Mercer*, 143 Idaho 108, 109, 138 P.3d 308, 309 (2006).

We agree with Scott that the State's interpretation of the provision would render the disputed language essentially superfluous since, by their very nature, all documents contained within court files are "organiz[ed] and maintain[ed]" by court personnel. Thus, the inclusion of "prepared by court personnel" in the rule would be meaningless because a judge could rely on all items in the file and avoid the general affidavit requirement. Because the document was not prepared by court personnel within the meaning of the rule, this exception was not applicable. Accordingly, the charging document was defective for failure to include an affidavit.

The State does not dispute that such a failure constitutes a fatal flaw. *See Steiner v. Gilbert*, 144 Idaho 240, 243, 159 P.3d 877, 881 (2007) (noting in a contempt proceeding that "[u]ntil the claimant can provide a sufficient affidavit, the court does not have jurisdiction to proceed"). The absence of an affidavit accompanying the written charge deprived the magistrate of jurisdiction to proceed with the case and, thus, the conviction must be vacated. Given this resolution, we need not address Scott's other contentions regarding the charging document--that it was jurisdictionally deficient and failed to give him the requisite notice.

B.      **Attorney Fees**

Scott contends that pursuant to Idaho Code § 7-610, he is entitled to attorney fees for the period during the proceedings below when he was represented by counsel. In addition to setting

forth penalties available if a party is adjudged guilty of contempt, section 7-610 provides that "the court in its discretion, may award attorney's fees and costs to the prevailing party." *See also* I.R.C.P. 75(m) (providing that in any nonsummary contempt proceeding the court may award the prevailing party costs and reasonable attorney fees under section 7-610); I.C.R. 42(m) (same).

Scott contends that if he prevails on appeal, "it is because the courts erred by failing to act consistently with the applicable legal standards" and therefore he should be awarded the fees he incurred below. The State contends that even if Scott prevails on appeal, he was not the prevailing party below and therefore he is not entitled to attorney fees.

In *State v. Rice*, 145 Idaho 554, 181 P.3d 480 (2008), the Idaho Supreme Court addressed the issue of attorney fees in a criminal contempt case where the district court found the defendant (an attorney) to be in criminal contempt for disobeying an order regarding the disclosure of an expert witness. The Supreme Court vacated the finding upon determining that the case "seems to be nothing more than a legitimate misunderstanding between the court and counsel as to what was expected." *Id*. at 557, 181 P.3d at 483. Under such circumstances, the court concluded, there was no justification for summarily imposing criminal contempt upon the attorney. *Id*. The court then declined to award the defendant attorney fees "[s]ince the Court concludes that this controversy resulted from a mutual misunderstanding of the court's order." *Id*. One justice dissented from this portion of the opinion stating, "Regardless of the competing interpretations of the district court's order, I would award attorney fees because it summarily adjudicated [the attorney] in contempt under circumstances in which summary contempt proceedings were clearly inappropriate." *Id*. (Eismann, C.J., concurring in part and dissenting in part).

Although this Court concludes Scott could not be prosecuted for criminal contempt under the facts as alleged, we do not believe it is a case where the pursuit of criminal contempt sanctions was so clearly inappropriate that justice and equity demand the imposition of attorney fees in favor of Scott. Scott's request for an award of attorney fees and costs is denied.

## III.

## CONCLUSION

Even assuming Rule 75(c)(1) applies to this contempt proceeding, because the written charge was not based entirely on the personal knowledge of the initiating magistrate or on documents in the file prepared by court personnel, an affidavit was required to accompany the charging document and its absence in this case deprived the magistrate of jurisdiction to proceed

with the case.  Because this issue is dispositive, we do not reach the remaining contentions raised by Scott.  Accordingly, the order of the district court, on intermediate appeal, affirming the magistrate's finding that Scott was guilty of criminal contempt is reversed.  In effect, this conclusion requires that the conviction be vacated.  We deny Scott's request for an award of attorney fees and for costs on appeal.

Judge MELANSON **CONCURS.**

Judge GRATTON **CONCURS IN THE RESULT**.