# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 41261

| | | |
|---|---|---|
| DEBRA B. WILLIAMS, | ) | 2014 Unpublished Opinion No. 550 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: June 5, 2014 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| JOHNNIE L. WILLIAMS, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Bonneville County. Hon. Jon J. Shindurling, District Judge. Hon. Penny J. Stanford, Magistrate.

Order of the district court in its appellate capacity, affirming the magistrate's rulings regarding division of community property, spousal maintenance, and attorney fees, affirmed.

Swafford Law, P.C.; Ronald L. Swafford, Idaho Falls, for appellant.

Gaffney Law Office, PLLC; Laurie Baird Gaffney, Idaho Falls, for respondent.

_____

GRATTON, Judge

Johnnie L. Williams appeals from the district court's intermediate appellate decision affirming the magistrate court's rulings regarding division of community property, spousal maintenance, and attorney fees.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Debra B. Williams (Debbie) fifty-two years old and Johnnie Williams (Rocky) fifty-seven years old were married in 1993 and lived in Oregon. Rocky adopted Debbie's daughter, who is now an adult. When they married, Rocky suffered from numerous physical ailments limiting his ability to work. Rocky suffered from brittle insulin-dependent diabetes, legal blindness, pain in his legs, and renal failure. Later, Rocky received a pancreas and kidney transplant. This increased his overall health, but his ability to work was still limited.

1

Upon marriage, Debbie moved in with Rocky who at the time was living with his mother. Debbie began paying the house and utility payments and Debbie assisted Rocky in applying for and receiving his social security disability payments. Rocky received a retroactive disability payment, and a substantial amount of this payment went to pay debt Rocky owed to his mother. Rocky now receives $1,315 per month in disability payments and he pays approximately $210 per month for Medicare coverage. Debbie was told that Rocky would qualify for additional Medicare coverage if he was not covered by her insurance. In 2002, Debbie began employment in Idaho and the couple moved to Idaho Falls. Her gross annual salary in this new position with the Idaho National Laboratory is $95,400.

In 2011, the parties stipulated to a divorce on grounds of irreconcilable differences, which the court granted. Despite the stipulation, the court heard testimony regarding fault. Rocky blamed the decline in the marital relationship on Debbie's relationship with another man. Debbie testified that the romantic relationship began after Debbie filed for divorce. Debbie blamed the divorce on Rocky's behavior and attitude toward her and her daughter throughout the marriage. She testified that during the first years of their marriage, Rocky struggled to control his temper. Debbie testified to verbal and emotional cruelty, as well as apathy towards her and her daughter while they were admitted in the hospital at various times. Rocky also made numerous threats to end his life after arguing with Debbie. On one occasion, Rocky locked himself in the barn with a handgun and threatened to kill himself. He was eventually taken into custody by law enforcement. He spent five days at the Behavioral Health Center, which resulted in the loss of his concealed weapons permit. Shortly before locking himself in the barn, Rocky took Debbie's clothes and threw them out onto the lawn. Rocky denied threatening to commit suicide or throwing Debbie's clothes on the lawn, and said the gun was in the barn only because a friend had told him to put it there.

Rocky testified at trial that he is generally able to care for himself. He receives assistance from a boarder who cooks meals in exchange for rent. Rocky also testified that he wants more social access to others and vocational rehabilitation. However, he is unable to drive, needs greater assistance to live in the rural residence, and an occupational disability expert testified that Rocky is occupationally disabled. The court found that Rocky was occupationally disabled.

A registered nurse testified that Rocky contacted her for assistance after Debbie moved out of the community home. She testified that Rocky needs help monitoring his skin and feet for

2

sores and problems, light housekeeping, preparing meals, doing laundry, changing the bedding, and in overseeing and managing medications. She also indicated that Rocky's home health care would be completely covered by Medicare and that he would need continued help.

The parties stipulated to the distribution of a majority of the community property. The parties had agreed to evenly split retirement accounts valued at $153,976.63 and $68,174.79. They also agreed Debbie had a separate property interest of $33,714.36 in the first account, which she would keep. The parties agreed to the distribution of personal property with Debbie taking all of the items that were subject to debt. The court awarded Debbie the house subject to its indebtedness, concluding the house was worth less than was owed on it. The court assigned all of the community debt to Debbie. Finally, the court granted Rocky $600 a month in spousal maintenance for a period of five years. Rocky appealed to the district court. The district court, sitting in its appellate capacity, affirmed the magistrate. Rocky timely appeals.

## II.

## ANALYSIS

When reviewing the decision of a district court sitting in its appellate capacity, our standard of review is the same as expressed by the Idaho Supreme Court:

> The Supreme Court reviews the trial court (magistrate) record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. If those findings are so supported and the conclusions follow therefrom and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure.

*Pelayo v. Pelayo*, 154 Idaho 855, 858-59, 303 P.3d 214, 217-18 (2013) (quoting *Bailey v. Bailey*, 153 Idaho 526, 529, 284 P.3d 970, 973 (2012)). Thus, the appellate courts do not review the decision of the magistrate court. *Bailey*, 153 Idaho at 529, 284 P.3d at 973. Rather, we are procedurally bound to affirm or reverse the decisions of the district court. *State v. Korn*, 148 Idaho 413, 415 n.1, 224 P.3d 480, 482 n.1 (2009).

## A.     Compliance with Idaho Rule of Civil Procedure 52(a)

Rocky first alleges that the district court did not prepare specific findings of fact and conclusions of law in accordance with Idaho Rule of Civil Procedure 52(a). He also claims there is no evidence to support the court's findings in regard to the community home's value, that he could live in an assisted living facility with minimal expenses not covered by Medicare, that an

3

individual's quality of life can be very high in an assisted living facility, that he receives or could receive government assistance, and numerous other findings that were in aid of the court's conclusions of law. After reviewing the magistrate's memorandum decision, we hold that the decision complied with I.R.C.P. 52(a), and that the court's factual findings are supported by substantial and competent evidence in the record.

**B.     Property Division**

Rocky contends that the court should have ordered the community home sold and challenges what he characterizes as an unequal distribution of personal property. The district court concluded that there was substantial and competent evidence and the magistrate court did not abuse its discretion. Division of community property in a divorce action is squarely within the discretion of the trial court. *Dunagan v. Dunagan*, 147 Idaho 599, 601, 213 P.3d 384, 386 (2009). Rocky's contention that the home should have been sold is primarily based on his assertion that the court should have accepted his testimony as to the value of the home. However, the district court also heard testimony from Debbie and reviewed a market analysis report. Debbie's testimony and the report placed the property value at roughly $240,000; whereas, Rocky testified that the value should be $300,000 to $350,000. The court accepted the lower value and we will not second-guess the trial court's finding that Debbie's testimony and the report are more credible than Rocky's testimony. We also concluded that the magistrate acted within its discretion by granting the home to Debbie, subject to its debt, particularly since the debt exceeded the value.

Rocky's argument concerning the personal property distribution is without merit. The parties agreed to a majority of the distribution of personal property, and Rocky's computation fails to include that Debbie took on the entirety of the community debt on such property.

**C.     Spousal Maintenance**

Rocky challenges the amount and duration of the award of spousal maintenance. Spousal maintenance is governed by Idaho Code § 32-705, which provides:

> 1. Where a divorce is decreed, the court may grant a maintenance order if it finds that the spouse seeking maintenance:
>     (a) Lacks sufficient property to provide for his or her reasonable needs; and
>     (b) Is unable to support himself or herself through employment.

4

2. The maintenance order shall be in such amounts and for such periods of time that the court deems just, after considering all relevant factors which may include:

(a) The financial resources of the spouse seeking maintenance, including the marital property apportioned to said spouse, and said spouse's ability to meet his or her needs independently;

(b) The time necessary to acquire sufficient education and training to enable the spouse seeking maintenance to find employment;

(c) The duration of the marriage;

(d) The age and the physical and emotional condition of the spouse seeking maintenance;

(e) The ability of the spouse from whom maintenance is sought to meet his or her needs while meeting those of the spouse seeking maintenance;

(f) The tax consequences to each spouse;

(g) The fault of either party.

"[W]hether to award spousal maintenance is discretionary and requires the court to give due consideration to each party's financial needs and abilities." *Stewart v. Stewart*, 143 Idaho 673, 679, 152 P.3d 544, 550 (2007). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the court reached its decision by an exercise of reason. *Sun Valley Shopping Ctr., Inc. v. Idaho Power Co.*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991).

The magistrate considered the above factors and awarded Rocky $600 a month in spousal maintenance for a period of five years. Rocky argues the court erred, as a matter of law, in failing to award him lifetime maintenance and by concluding that his monthly income will meet his reasonable needs. However, a court does not order lifetime maintenance as a matter of law. Instead, the court will issue maintenance in an amount and duration within its discretion. In reaching its determination of support, the court emphasized governmental programs that are designed to help those with disabilities that Rocky is eligible for, but has chosen not to look into or enroll in. The magistrate also put great weight in the distribution of community property. The assets were split; whereas, Debbie took on all of the community debt. Rocky is also able to draw from his portion of the retirement accounts without penalty due to his disability. Though Debbie has a higher monthly income, the expenses in her budget, which the magistrate found reasonable, nearly exhaust all of her monthly income. The court perceived it had the discretion to award the

5

maintenance, acted within that discretion, and reached its decision through reasonable consideration of the factors set forth in I.C. § 32-705.

Rocky argues that because neither party alleged fault as a ground for divorce, the court erred in accepting testimony regarding fault. Debbie correctly notes that consideration of fault is appropriate when spousal maintenance is at issue. Marital fault is expressly included as one of the factors a court is to consider in awarding spousal maintenance. *Pelayo*, 154 Idaho at 860-61, 303 P.3d at 219-20 (2013). Thus, the court did not err in hearing testimony regarding fault. Rocky also argues that the court failed to delineate which category of fault the court concluded he committed under I.C. § 32-603. However, when a basis for fault is not given, we will not overturn a finding of fault where the basis for such a finding is supported by substantial competent evidence. *See Bell v. Bell*, 122 Idaho 520, 525, 835 P.2d 1331, 1336 (Ct. App. 1992). A review of the record provides substantial and competent evidence to support a finding that substantial fault lies with Rocky, specifically Rocky's treatment of Debbie at the conclusion of their marriage. However, the court did not rely on Rocky's fault when determining the spousal award. Instead, the court merely noted that it would have found Rocky at fault and primarily relied on the fault testimony in support of its conclusion that Rocky was not a credible witness.

## D.     Attorney Fees

Rocky challenges the denial of attorney fees, claiming they were denied because the court believed he sought trial as a matter of vindictiveness. He also requests attorney fees for the present appeal. The magistrate denied attorney fees under I.C. § 32-704 after considering the factors in I.C. § 32-705. The district court upheld the denial of attorney fees, agreeing with the magistrate that after paying her living expenses, the community debt, and spousal support, Debbie would not have the financial ability to pay Rocky's attorney fees. The district court also denied Rocky attorney fees on appeal. Debbie argues that the district court did not err in its conclusion and that Rocky should also be denied attorney fees for this appeal. She argues that Rocky asks this Court to second-guess decisions that were properly made by the magistrate and upheld by the district court.

There is substantial and competent evidence to support the lower court's finding that Debbie would be unable to pay attorney fees in light of her expenses and debt obligations. As far as the court commenting that Rocky sought trial in a spirit of vindictiveness, Debbie testified that when she first sought divorce, Rocky told her he would make her pay and he would take

6

everything. Rocky did not deny this, instead testifying that he only told her he would take the house. As noted, the court found Debbie credible. Even so, the magistrate's comment regarding vindictiveness is not the basis of its decision regarding attorney fees. The district court properly affirmed the denial of attorney fees and properly denied fees on appeal. We agree with Debbie that a substantial number of Rocky's claims of error were factual findings that were clearly supported by evidence in the record. Rocky has not prevailed on this appeal and the finding that, given her obligations, Debbie would be unable to pay his attorney fees is supported in the record. Debbie does not request attorney fees. However, we award costs to Debbie as the prevailing party under Idaho Appellate Rule 40.

## III.

## CONCLUSION

Rocky has failed to show error. Therefore, the district court's order affirming the magistrate is affirmed. Costs, but not attorney fees, on appeal are awarded to Debbie.

Chief Judge GUTIERREZ and Judge MELANSON **CONCUR.**